# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN FREEDOM DEFENSE INITIATIVE,

PAMELA GELLER,

ROBERT SPENCER,

JIHAD WATCH,

     Plaintiffs,

   v.

LORETTA LYNCH, in her official capacity as Attorney General of the United States,

     Defendant.

Civil Action No. 1:16-cv-01437-JEB

## FEDERAL DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..................................................... 1

STATUTORY AND FACTUAL BACKGROUND ................................ 2

    I.    Section 230 of the Communications Decency Act. .................................2

    II.    Factual Background. ...............................................................4

STANDARD OF REVIEW ........................................................ 5

ARGUMENT ....................................................................... 7

    I.    PLAINTIFFS LACK STANDING TO BRING THIS ACTION CHALLENGING THE CONSTITUTIONALITY  OF SECTION 230 OF THE COMMUNICATIONS DECENCY ACT............................................7

        A.    Plaintiffs' Alleged Injury Is Not Fairly Traceable to Section 230 .................. 8

        B.    This Court Cannot Redress Plaintiffs' Alleged Injury. ................................ 10

    II.    PLAIINTIFFS FAIL TO IDENTIFY ANY STATE ACTION THAT COULD IMPLICATE THE FIRST AMENDMENT...........................................11

CONCLUSION..................................................................... 17

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*1st Westco Corp. v. Sch. Dist. of Phila,*
  6 F.3d 108 (3d Cir. 1993)..................................................................... 11, 13

*\*Am. Manuf. Mut. Ins. Co. v. Sullivan,*
  526 U.S. 40 (1999)...................................................................... 12, 13, 15

*Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015)........................................................................ 6

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................... 6

*Ass'n of Inv. Brokers v. SEC,*
  676 F.2d 857 (D.C. Cir. 1982).................................................................. 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...................................................................................... 6

*Blum v. Yaretsky,*
  457 U.S. 991 (1982).................................................................................... 12

*Blumenthal v. Drudge,*
  992 F. Supp. 44 (D.D.C. 1998) .................................................................. 2

*Brentwood Academy v. Tennessee Secondary Sch. Athletic Assoc.,*
  531 U.S. 288 (2001).................................................................................... 11

*Browning v. Clinton,*
  292 F.3d 235 (D.C. Cir. 2002)..................................................................... 6

*Carafano v. Metrosplash.com, Inc.,*
  339 F.3d 1119 (9th Cir. 2003) .................................................................... 3

*Chamber of Commerce of U.S. v. Whiting,*
  563 U.S. 582 (2011)...................................................................................... 9

*\*Clapper v. Amnesty Int'l USA,*
  133 S. Ct. 1138 (2013).................................................................................. 7

*Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.,*
  412 U.S. 94 (1973)...................................................................................... 11

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006)...................................................................................... 6

*\*Denver Area Educ. Telecomms. Consortium, Inc. v. F.C.C.,*
  518 U.S. 727 (1996)........................................................................ 11, 14, 15

*EEOC v. St. Francis Xavier Parochial Sch.,*
  117 F.3d 621 (D.C. Cir. 1997)..................................................................... 6

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
  521 F.3d 1157 (9th Cir. 2008) .................................................................... 4

*Fla. Audubon Soc'y v. Bentsen,*
  94 F.3d 658 (D.C. Cir. 1996) ...................................................................... 8

*\*Flagg Bros. v. Brooks,*
  436 U.S. 149 (1978).................................................................................... 13

*\*Hudgens v. N.L.R.B.,*
  424 U.S. 507 (1976)................................................................................ 8, 11

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
515 U.S. 557 (1995) ................................................................................................ 8

*Islamic Am. Relief Agency v. Gonzales*,
477 F.3d 728 (D.C. Cir. 2007) ............................................................................... 6

*Jackson v. Metropolitan Edison Co.*,
419 U.S. 345 (1974) .............................................................................................. 12

*Kemp v. Eiland*,
139 F. Supp. 3d 329 (D.D.C. 2015) ....................................................................... 6

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) ........................................................................ 2, 3

*Kokkonen v. Guardian Life Ins. Co.*,
511 U.S. 375 (1994) ........................................................................................... 5, 6

*\*Kolinske v. Lubbers*,
712 F.2d 471 (D.C. Cir. 1983) ............................................................................. 13

*\*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982) .............................................................................................. 13

*\*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...................................................................................... passim

*\*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
485 U.S. 439 (1988) ................................................................................................ 8

*Miami Herald Publishing Co. v. Tornillo*,
418 U.S. 241 (1974) ................................................................................................ 8

*Nat'l Taxpayers Union v. U.S. Social Sec. Admin.*,
376 F.3d 239 (4th Cir. 2004) ................................................................................. 9

*New York Republican State Comm. v. S.E.C.*,
799 F.3d 1126 (D.C. Cir. 2015) .......................................................................... 10

*\*Okpalobi v. Foster*,
244 F.3d 405 (5th Cir. 2001) ........................................................................... 9, 11

*\*Roberts v. AT&T Mobility LLC*,
No. 15-CV-03418-EMC, 2016 WL 1660049 (N.D. Cal. Apr. 27, 2016) ........... 14, 15

*Simon v. Eastern Ky. Welfare Rights Organization*,
426 U.S. 26 (1976) .................................................................................................. 8

*State of W. Virginia v. United States Dep't of Health & Human Servs.*,
145 F. Supp. 3d 94 (D.D.C. 2015) ......................................................................... 6

*Stratton Oakmont, Inc. v. Prodigy Services Co.*,
1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) .................................................. 3

*Tulsa Professional Collection Services, Inc. v. Pope*,
485 U.S. 478 (1988) .............................................................................................. 15

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) ................................................................................................ 7

*Village of Bensenville v. F.A.A.*,
457 F.3d 52 (D.C. Cir. 2006) ............................................................................... 12

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) ........................................................................... 2, 3

## STATUTES

47 U.S.C. § 230(b) .................................................................................................. 3

47 U.S.C. § 230(c) ........................................................................................................... 2, 9
47 U.S.C. § 230(c)(1)........................................................................................................... 2
47 U.S.C. § 230(c)(2)-(A)..................................................................................................... 4
47 U.S.C. § 230(e)(3)........................................................................................................... 2

**RULES**

Fed. R. Civ. P. 12(b)(1)..................................................................................................... 5, 15
Fed. R. Civ. P. 12(b)(6)..................................................................................................... 6, 15

## PRELIMINARY STATEMENT

Plaintiffs are dissatisfied with the manner in which private social media companies—Facebook, YouTube, and Twitter—are moderating the speech Plaintiffs post to their social media accounts.   But instead of suing the company responsible for running a particular social-media platform, Plaintiffs have sued the Attorney General of the United States, arguing that her enforcement of Section 230 of the Communications Decency Act ("CDA") is facilitating private censorship and that this facilitation violates the First Amendment of the United States Constitution.   This case is without merit and should be dismissed for two reasons.

First, Plaintiffs cannot establish Article III standing.   Plaintiffs' alleged injury—a private social-media company's removal of content from a particular user's account pursuant to that company's private terms of service—is not an action that is fairly traceable to the United States or the federal statute Plaintiffs identify in their Complaint—Section 230 of the CDA.   Instead, Plaintiffs' allegations make clear that they are aggrieved by the decisions of private third parties, whom the United States does not control and whose actions it cannot predict.   Plaintiffs' alleged injury is also not redressable by their requested relief.   Plaintiffs request that the Court declare Section 230 to be unconstitutional and to enjoin the Attorney General from enforcing this provision.   But the Attorney General does not enforce Section 230 against private parties.   To the contrary, this provision merely provides an immunity that a private party can invoke as a defense in a private civil lawsuit.   Because the Attorney General does not enforce Section 230 against anyone, an injunction prohibiting such non-existent enforcement would be meaningless and would not redress Plaintiffs' alleged injury.

Second, even if Plaintiffs could establish Article III standing, they fail to state a cognizable constitutional claim because they do not identify any state action that could implicate

the First Amendment.   It is axiomatic that the First Amendment applies only to the government's restriction of speech, and not to a private individual or entity's decision to permit or restrict speech.   Yet Plaintiffs challenge a quintessentially private decision in this case—a social media company's control of its platform pursuant to its terms of service.   Under well-established state-action principles, Plaintiffs cannot show that Section 230 caused the constitutional deprivation they allege, or that the entities causing the injury—private social media companies—are state actors.   Therefore, Plaintiffs fail to state a claim under the First Amendment and judgment should be entered in favor of the United States.

## STATUTORY AND FACTUAL BACKGROUND

### I.   Section 230 of the Communications Decency Act

Section 230 of the Communications Decency Act ("CDA") immunizes providers of interactive computer services from civil liability for content created by third-party users.   *See* 47 U.S.C. § 230(c); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1355-56 (D.C. Cir. 2014).   Section 230(c)(1) of the CDA commands that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).   Section 230(e)(3), in turn, gives that provision preemptive effect, by expressly preempting any cause of action that would hold an interactive-computer-service provider liable as a speaker or publisher of speech provided by others.   *See id.* § 230(e)(3).   By enacting Section 230, "Congress decided not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing or distributing obscene or defamatory material written or prepared by others." *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998).

Section 230 immunity generally serves two important policy goals.  First, Section 230 "maintain[s] the robust nature of Internet communication," by eliminating "the threat that tort-based lawsuits pose to freedom of speech."  *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330 (4th Cir. 1997); *see also Klayman*, 753 F.3d at 1355–56 (explaining that Section 230 is intended "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation[.]") (citing 47 U.S.C. § 230(b)(2)).  As the Fourth Circuit has explained:

> It would be impossible for service providers to screen each of their millions of postings for possible problems.  Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted.  Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Zeran*, 129 F.3d at 331.

Second, Section 230 removes disincentives to self-regulation by assuring interactive-computer-service providers that they can safely self-police their online services for offensive material without fear that their editorial choices might subject them to liability.  *Zeran*, 129 F.3d at 331; *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003) ("Congress enacted this provision . . . to encourage voluntary monitoring for offensive or obscene material.").  In this respect, the legislative history shows that Section 230 was intended to overrule the disincentives to self-regulation created by a New York state-court decision, *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995).  *See*, *e.g.*, *Zeran*, 129 F.3d at 331.  *Stratton Oakmont* held that an interactive-computer-service provider could be liable for libelous statements posted by an unnamed third-party.  *Id.*  The court reasoned that the provider could be held liable as a publisher of the libelous statements because

"it advertised its practice of controlling content on its service and because it actively screened and edited messages posted on its bulletin boards." *Id.* Section 230 removes the disincentives to self-regulation created by *Stratton Oakmont* and other similar decisions, and thus forbids imposing liability for actions taken by a service provider to restrict some, but not all, content posted by third parties. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157, 1163 (9th Cir. 2008) ("Congress sought to spare interactive computer services this grim choice by allowing them to perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete."). Accordingly Section 230(c)(2) provides "Good-Samaritan" protections from civil liability for interactive-computer-service providers for "any action voluntarily taken in good faith to restrict access to or availability of material" that the provider considers to be objectionable.   47 U.S.C. § 230(c)(2).

## II.   Factual Background

Plaintiffs are two non-profit organizations—the American Freedom Defense Initiative ("AFDI") and Jihad Watch—and two of these organization's individual officers—Pam Geller and Robert Spencer (collectively "Plaintiffs")—who allege that they exercise their right to freedom of speech through the use of social media, including Facebook, Twitter, and YouTube. *See* Compl. ¶¶ 6, 10, 11, 18. Plaintiffs allege a single constitutional claim under the First Amendment. Compl. ¶¶ 128-141. Plaintiffs generally claim that "Facebook, Twitter, and YouTube censor voices they dislike, and Facebook and Twitter often allow threats directed against those same voices to remain, thereby engaging in unlawful discrimination and censorship, all of with is made possible by § 230 of the CDA." Compl. ¶ 125. Plaintiffs also complain about specific instances in which Facebook, YouTube, or Twitter allegedly have

censored Plaintiffs' social media activity on the basis of content or in a discriminatory manner: (1) Plaintiff Geller alleges that Facebook removed certain content from her "Islamic-Jew-Hatred" page and her "Stop Islamization of America" page pursuant to Facebook's Community Standards,  Compl. ¶¶ 78-87; (2) Plaintiff Geller alleges that YouTube officials removed a video from her YouTube channel "that was of a first-hand undercover investigation conducted in the Al-Farooq mosque in Nashville, Tennessee," Compl. ¶ 102; (3) Plaintiff Spencer alleges that the name of his organization, Jihad Watch, is protected by U.S. copyright and trademark law, and that Facebook and Twitter have incorrectly determined that the use of this name by another user does not constitute trademark infringement, Compl. ¶¶ 118-20; and (4) Plaintiff Spencer alleges that an unnamed individual has used Twitter and Facebook to issue threats to his safety, and that Twitter and Facebook have declined to remove the material.  Compl. ¶¶ 121-24.

To remedy the manner in which Facebook, Twitter, and YouTube are censoring Plaintiffs' social media accounts, Plaintiffs ask the Court to declare that Section 230 of the Communications Decency Act is unconstitutional and to enjoin any enforcement of the statute. Compl. at 24, Prayer for Relief ¶ A-B.  Plaintiffs contend that Section 230 "permits Facebook, Twitter, YouTube and others to engage in government-sanctioned discrimination and the suppression of free speech."  Compl. ¶ 2; *see also id.* ¶ 66 ("[B]y way of § 230 of the CDA, the federal government is empowering discrimination and the censorship of speech in these vast democratic forums."); *id.* ¶ 67 ("Section 230 permits content- and viewpoint-based censorship of speech."); *id.* ¶ 68 ("Section 230 confers broad powers of censorship, in the form of a 'heckler's veto,' upon Facebook, Twitter, and YouTube censors, who can censor constitutionally protected speech and engage in discriminatory business practices with impunity by virtue of this power conferred by the federal government."); *id.* ¶ 74 ("Section 230 permits Facebook, Twitter, and

YouTube to engage in government sanctioned discrimination and censorship of free speech."). The sole Defendant named in the Complaint is Loretta Lynch, sued in her official capacity as Attorney General of the United States.  Compl. ¶ 28.

## STANDARD OF REVIEW

Defendant moves to dismiss Plaintiffs' claims under Rule 12(b)(1) for lack of subject matter jurisdiction, on the ground that Plaintiffs have failed to establish standing.  In reviewing a motion to dismiss under Rule 12(b)(1), a court is guided by the principle that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Thus, "a federal court must presume that it 'lack[s] jurisdiction unless the contrary appears affirmatively from the record.'"  *State of W. Virginia v. United States Dep't of Health & Human Servs.*, 145 F. Supp. 3d 94, 98 (D.D.C. 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3 (2006)). "The burden of demonstrating the contrary, including establishing the elements of standing, 'rests upon the party asserting jurisdiction.'" *Id.* (quoting *Kokkonen*, 511 U.S. at 377).  When considering jurisdiction based on the face of a plaintiff's complaint, a court "must accept 'well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor.'"  *Id.* (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).  However, the court need not "assume the truth of legal conclusions,'" *id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), "nor 'accept inferences that are unsupported by the facts set out in the complaint,'" *id.* (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).  Rather, in order to avoid dismissal, a complaint must "contain sufficient factual matter 'to state a claim [of standing] that is plausible on its face.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Defendant also moves in the alternative for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that Plaintiffs fail to state a claim upon which relief can be granted.  A Rule 12(b)(6) challenge "tests the legal sufficiency of a complaint."  *Kemp v. Eiland*, 139 F. Supp. 3d 329, 335 (D.D.C. 2015) (citing *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).  In evaluating such a claim, the plausibility requirement of *Ashcroft* and *Twombly* applies to the merits of a plaintiff's claims.  *See id.*  Thus, in order to withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678. The court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Kemp*, 139 F. Supp. 3d at 335-36 (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

## ARGUMENT

I. **PLAINTIFFS LACK STANDING TO BRING THIS ACTION CHALLENGING THE CONSTITUTIONALITY OF SECTION 230 OF THE COMMUNICAITONS DECENCY ACT.**

Plaintiffs fail to establish standing to bring their First Amendment claim, and thus this case should be dismissed for lack of subject matter jurisdiction.  "The judicial power of the United States" is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies,'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982), and the demonstration of a plaintiff's standing to sue "is an essential and unchanging part of the case-or-controversy requirement," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Article III standing, moreover, is "built on separation-of-powers principles" and thus "serves to prevent the judicial process from being used to usurp the

powers of the political branches." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013).

Consistent with this purpose, the standing inquiry must be "especially rigorous" when reaching

the merits of a claim would force a court to decide the constitutionality of actions taken by a

coordinate Branch of the Federal Government. *Id.* at 1147.

The "irreducible constitutional minimum of standing" contains three elements. First, the

plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which

is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.

Second, there must be a causal connection between the injury and the conduct complained of.

Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a

favorable decision. *See Lujan*, 504 U.S. at 560-61. Here, assuming for purposes of this motion

only that Plaintiffs have alleged a cognizable injury-in-fact, they still fail to establish Article III

standing because their alleged injury is not traceable to the Attorney General, nor could their

alleged injury be redressed by declaring Section 230 to be unconstitutional and enjoining its

enforcement.[1]

---

[1]  With respect to injury-in-fact, Plaintiffs allege that they have been injured because private
social media companies are censoring their speech on the basis of content and viewpoint. *See*
Compl. ¶¶ 78-127. It is not at all clear whether Plaintiffs have a legally-protected interest in how
a private social media company moderates third-party content pursuant to its private terms of
service. The First Amendment of the United States Constitution applies only to governmental
conduct and not to private entities, and thus the First Amendment poses no requirements on a
social media company. *See e.g.*, *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976). Nor is it clear
how California law can require a private social media company to publish Plaintiffs' speech, *see*
Compl. ¶¶ 46-61, or how such a state-law requirement would be consistent with the First
Amendment, which arguably protects a social media company's editorial control or judgment
from government regulation that would require publication of a certain message. *See, e.g.,*
*Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974); *Hurley v. Irish-American Gay,*
*Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995). Nonetheless, the Court need not
resolve these issues here because Plaintiffs cannot establish the other elements of Article III
standing—namely, causation and redressability. *See, e.g.*, *Lyng v. Northwest Indian Cemetery*
*Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of

A.      **Plaintiffs' Alleged Injury Is Not Fairly Traceable to Section 230.**

Plaintiffs lack standing because they cannot show that their alleged injury—a private

social media company's decision to remove content pursuant to its private terms of service—is

fairly traceable to the Attorney General of the United States.  The causation prong of the

standing inquiry asks whether "it is substantially probable that the challenged acts of the

defendant, not some absent third party, will cause the particularized injury of the plaintiff."  *Fla.*

*Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (internal citations omitted).  As the

Supreme Court has recognized, an alleged injury has to be "fairly . . . trace[able] to the

challenged action of the defendant, and not ... th[e] result [of] the independent action of some

third party not before the court."  *See Lujan*, 504 U.S. at 560 (*quoting Simon v. Eastern Ky.*

*Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)); *see also Lujan* at 504 U.S. at 560-62

(injury caused by choices made by independent actors not before the courts is insufficient to

confer standing).

Here, Plaintiffs cannot establish that the Attorney General caused their alleged injury

because the Attorney General does not control the manner in which a private social media

company moderates content under its terms of service.  Instead, Plaintiffs' alleged injury was

caused or will be caused by "the independent action of some third party not before the court"—

namely Facebook, Twitter, or YouTube—and thus is insufficient to establish standing to sue the

Attorney General.  *Lujan*, 504 U.S. at 560.  Indeed, Plaintiffs' Complaint focuses at length on the

specific decisions of private social media companies to remove particular content under their

judicial restraint requires that courts avoid reaching constitutional questions in advance of the
necessity of deciding them.").

private terms of service.   *See* Compl. ¶¶ 78-127.  But Plaintiffs do not plead any facts showing that this private conduct from a third-party is fairly traceable to the Attorney General.

Nor can Plaintiffs establish causation by challenging Section 230 of the CDA itself. Plaintiffs' causal theory is that social media companies unfairly moderate the content of its users' online activity and that they do so because of the Attorney General's enforcement of Section 230.  *See* Compl. ¶¶ 28, 66-74.  But contrary to Plaintiffs' allegations, the Attorney General does not enforce Section 230, and thus Plaintiffs cannot establish that the Attorney General's (nonexistent) enforcement authority has caused or will cause their alleged injury.  In fact, Section 230 is not enforced by *any* federal agency or federal official.  Instead, this statutory provision simply provides an immunity from civil lawsuits filed by private parties against other private parties for harms allegedly caused by certain information posted on the internet.  *See* 47 U.S.C. § 230(c).  Thus, Section 230 is not a statute that the Attorney General enforces against private parties and that can be challenged in an enforcement proceeding or pre-enforcement proceeding. *See, e.g., Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 593 (2011) (describing a "preenforcement suit in federal court against those charged with administering the Arizona law"); *Nat'l Taxpayers Union v. U.S. Social Sec. Admin.*, 376 F.3d 239, 242 (4th Cir. 2004) (considering preenforcement challenge to the constitutionality of the Social Security Act, enforced by the Social Security Administration).  Because the Attorney General does not enforce Section 230, Plaintiffs cannot establish that their alleged injuries were caused or will be caused by the Attorney General's actions.  *See, e.g.*, *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (explaining that, under constitutional standing principles, "a plaintiff may not sue a state official who is without any power to enforce the complained-of statute.").

Indeed, the lack of traceability is highlighted by the poor fit between traditional preenforcement challenges against the Attorney General and this case.  In traditional preenforcement challenges, standing requirements are reduced based upon the fear that potential plaintiffs are chilled by the mere threat of enforcement.  *See, e.g.*, *New York Republican State Comm. v. S.E.C.*, 799 F.3d 1126, 1135–36 (D.C. Cir. 2015).  Here, however, Plaintiffs do not allege that they are afraid to speak.  To the contrary, they allege that they do so constantly.  *See* Compl. ¶¶ 78-127.  And unlike traditional preenforcement challenges, Plaintiffs here retain the ability to challenge the restrictions on their speech that they complain about here, *i.e.* by suing the social media companies directly.  If Section 230 is raised as a defense to that lawsuit, Plaintiffs remain free to raise the First Amendment in opposition to that defense.

### B.      This Court Cannot Redress Plaintiffs' Alleged Injury.

Plaintiffs also fail to establish that their alleged censorship injury is likely to be redressed by their requested declaratory and injunctive relief.  To establish redressability, a plaintiff must demonstrate that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (internal quotations and citation omitted).  Here, Plaintiffs request that the Court redress their alleged injury—the censorship of their speech by private social media companies—by declaring Section 230 to be unconstitutional under the First Amendment and enjoining the Attorney General from enforcing this provision.  *See* Compl. at 24, Prayer for Relief, ¶¶ A-B.  But, as discussed, the Attorney General does not enforce Section 230, and thus no declaration or injunction against her in this suit would redress Plaintiffs' alleged injury.  To be sure, the requested declaratory and injunctive relief would not restore speech on Plaintiffs' accounts, nor would it prohibit a particular social-media company from making a particular editorial choice regarding Plaintiffs' accounts in the future.  Nor does

the Attorney General have the authority to prevent a private entity from invoking Section 230 as

a defense in a private civil suit.   In short, because neither the Court nor the Attorney General has

the authority to redress Plaintiffs' claim that private non-parties are unfairly moderating content

on their services, Plaintiffs lack standing and this case should be dismissed.  *See Okpalobi*, 244

F.3d 405, 426 (5th Cir. 2001) (explaining that plaintiff could not establish redressability because

state attorney general did not enforce the challenged statute and could not prevent a private entity

from invoking statute in a private lawsuit); *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108,

114–15 (3d Cir. 1993) (finding no case or controversy as to state attorney general based on

"general duty to enforce the laws" when not "specifically charged with the duty of enforcing the

challenged statute"); *Ass'n of Inv. Brokers v. SEC*, 676 F.2d 857, 861–62 (D.C. Cir. 1982)

(holding that association of investment brokers lacked standing to sue the SEC because use of

the challenged form was required by self-regulatory organization, not the SEC).

## II.    PLAINTIFFS FAIL TO IDENTIFY ANY STATE ACTION THAT COULD IMPLICATE THE FIRST AMENDMENT.

It is axiomatic that the First Amendment applies only to the state and federal government

and not to private parties.  *See, e.g.*, *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976) ("It is, of

course, a commonplace that the constitutional guarantee of free speech is a guarantee only

against abridgment by government, federal or state.") (citing *Columbia Broad. Sys., Inc. v.

Democratic Nat'l Comm.*, 412 U.S. 94, 114 (1973)); *see also Denver Area Educ. Telecomms.

Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 737 (1996) ("We recognize that the First Amendment,

the terms of which apply to governmental action, ordinarily does not itself throw into

constitutional doubt the decisions of private citizens to permit, or to restrict, speech . . . .").

Accordingly, a basic principle of constitutional law holds that the First Amendment applies only

to individuals or entities engaged in "state action."  *See, e.g., Brentwood Academy v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295 (2001).

To demonstrate the requisite state action, Plaintiffs must allege facts showing a "sufficiently close nexus between the [Government] and the challenged action of the [] entity so that the action of the latter 'may be fairly treated as that of the [Government] itself.'"  *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350-51 (1974)); *see also Village of Bensenville v. F.A.A.*, 457 F.3d 52, 64-65 (D.C. Cir. 2006). In this respect, the "mere fact that a business is subject to [governmental] regulation does not by itself convert its action into that of the [Government]." *Am. Manuf. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 52 (1999) (quoting *Jackson,* 419 U.S. at 350).  Rather, First Amendment scrutiny applies to private parties "only when it can be said that the [Government] is *responsible* for the specific conduct of which the Plaintiff complains." *Blum,* 457 U.S. at 1004 (emphasis in original).  As the Supreme Court has made clear, government responsibility for a private decision, requires more than "[m]ere approval of or acquiescence in the initiatives of a private party." *Id.*  To the contrary, the Government can be held responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [Government]." *Id.*

Here, Plaintiffs complain that social media companies—namely, Facebook, YouTube, and Twitter—are moderating content in a manner that is discriminatory and constitutes censorship.  Compl. ¶¶ 78-127.  But clearly the Attorney General does not administer Plaintiffs' social media accounts or control how a social media company implements its terms of service. Nor has the Attorney General encouraged a private social media company to remove content from Plaintiffs' social media accounts.   Plaintiffs, therefore, have failed to plead that the

government has "exercised coercive power" or "provided such significant encouragement" such that the alleged censorship by private social media companies can "be deemed to be that of the State." *Am. Manuf.*, 526 U.S. at 52 (citing *Blum*, 457 U.S. at 1004-05).

Nor can Plaintiffs establish state action by characterizing their claim as a facial challenge to Section 230 itself. *See* Compl. ¶ 2 (alleging that Section 230 "permits Facebook, Twitter, YouTube and others to engage in government-sanctioned discrimination and the suppression of free speech."); *see also id.* ¶ 67, 68, 74. As the Supreme Court has explained, "state action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Am. Mfrs.*, 526 U.S. at 50 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *see also Flagg Bros. v. Brooks*, 436 U.S. 149, 165–66 (1978); *Kolinske v. Lubbers*, 712 F.2d 471, 477 (D.C. Cir. 1983) (explaining that state action requires a nexus between the private party's conduct and that taken by the government entity "such that the conduct should be attributed to the state.").

Plaintiffs meet neither prong of this test. First, the alleged constitutional deprivation here—the allegedly discriminatory manner in which third-party social media companies are moderating their services—was not caused by the exercise of any right created by Section 230. Plaintiffs have specifically *not* sued any social media company in this action, and thus no company has been alleged to have exercised any of its Section 230 rights. Second, Plaintiffs cannot show that a private social media company's moderation of its private services in accordance with private terms of service is conduct that is fairly attributable to the state. Here, the entities responsible for the conduct at issue here—Facebook, YouTube, and Twitter—are

private companies running private social media platforms.  They are in no sense arms of the

state.  Nor does Section 230 magically transform a private interactive-computer-service provider

into a state actor.  Section 230 at most provides a defense against civil liability for purely private

action—a private interactive-computer-service provider's decision to remove the content posted

by private third-parties pursuant to private terms of service.  Accordingly, Section 230 falls far

short of the requisite government involvement to support a finding of state action.

Plaintiffs also err to the extent they rely on *Denver Area Educational*

*Telecommunications v. FCC*, 518 U.S. 727 (1996) to support their state-action theory here.  *See*

Compl. ¶ 75 (citing language from *Denver Area* for proposition that Section 230 constitutes state

action).  In *Denver Area*, the Supreme Court addressed "First Amendment challenges to three

statutory provisions that seek to regulate the broadcasting of 'patently offensive' sex-related

material on cable television."  *Id.* at 732.  These provisions placed various restrictions on

"special channels" known as "leased access channels" and "public, educational, or governmental

channels" (commonly known as PEG channels) that "carry programs provided by those to whom

the law gives special cable system access rights."  *Id.* at 734.  For a period of time, federal law

"prohibited cable system operators from exercising any editorial control over the content of any

program broadcast over either leased or public access channels."  *Id.* (citation omitted).

Concerned about the rise of sexually explicit material on these channels, Congress later passed

legislation that "permit[ed] cable operators either to allow or to forbid the transmission of

'patently offensive' sex-related materials over both leased and public access channels, and

require[ed] those operators, at a minimum, to segregate and to block transmission of that same

material on leased channels."  *Id.*  at 736.  As pertinent here, a plurality of the Supreme Court

assumed that these statutory provisions permitting cable operators to prohibit or limit certain

programs based on content could constitute state action implicating the First Amendment, although no majority opinion was reached on the state action issue.  *Id.*

Denver Area* does not support a finding of state action here.  The assumption of state action in that case "must be seen in its proper context."  *Roberts v. AT&T Mobility LLC*, No. 15-CV-03418-EMC, 2016 WL 1660049, at *7 (N.D. Cal. Apr. 27, 2016) (distinguishing *Denver Area*).  Specifically, the Court was addressing "regulatory legislation particular to cable operators who are often given unique monopolistic power over a single cable system linking broadcasters with the community, and who are 'unusually involved' with the government via, *e.g.*, given rights of way and access to governmental facilities."  *Id.* (citing *Denver Area*, 518 U.S. at 739).  By contrast, this case involves a social media company's ability to moderate speech under its private terms of service, an area that does not implicate the same degree of government regulatory involvement.  In addition, subsequent to *Denver Area*, the Supreme Court has continued to adhere to the general proposition that "[p]rivate use of state-sanctioned private remedies or procedures does not rise to the level of state action."  *Am. Mfrs.*, 526 U.S. at 53 (citing *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 485 (1988)).  Thus, given its unique factual context and the Supreme Court's subsequent pronouncements, "*Denver Area* did not establish a categorical rule that a statute which permits private parties to restrict the speech or other rights of private citizens constitutes as a general matter state action."  *Roberts*, 2016 WL 1660049, at *8.  To the contrary, the decision by a social media company to remove third-party content from its services is not a decision by a state actor that could trigger an analysis under the First Amendment.  Therefore, Plaintiffs' First Amendment claim should be dismissed.

## CONCLUSION

For all the reasons stated above, this case should be dismissed pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6).

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director, Federal Programs Branch

*Matthew A. Josephson*
MATTHEW A. JOSEPHSON
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 7304
Washington, DC 20530
Tel: (202) 514-9237
Email: Matthew.A.Josephson@usdoj.gov

**Counsel for Federal Defendant Loretta Lynch**